No. 10,368.

SCHRAEDER, SHERIFF, ET AL. *v.* MITCHELL.

Decided May 7, 1923.

Action for possession of cattle taken under execution. Judgment for plaintiff.

*Reversed.*

1. APPEAL AND ERROR—*Fact Findings.* Fact findings of the trial court are binding upon the court of review.

2. PERSONAL PROPERTY—*Ownership—Issue.* In an action to recover personal property taken by a sheriff under execution, the issue is, did the plaintiff, not some other person, own the property.

3. ESTOPPEL—*Evidence.* In an action for the possession of personal property taken under execution, evidence reviewed and plaintiff held estopped to claim possession.

4. JUDGMENT AND EXECUTION—*Execution Creditor—Status.* In a controversy over the right to the possession of personal property taken under execution, the execution creditor is in the position of a purchaser.

5. ESTOPPEL—*Elements.* Mere negligence in clothing another with apparent title, is enough to estop one to deny that title, against one thereby deceived to his injury.

6. EXECUTION—*Ownership—Knowledge of Deputy Sheriff.* Where a sheriff is acting in his official capacity and appoints a citizen as his deputy to perform a special act—take possession of cattle under execution—the officer will not be charged with knowledge of the deputy concerning the ownership of the property, acquired before his appointment.

*Error to the District Court of Lake County, Hon. Francis E. Bouck, Judge.*

Mr. R. D. McLEOD, for plaintiffs in error.

Mr. QUENTIN D. BONNER, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

HULDA SOPHIE MITCHELL, defendant in error, had judgment against Schraeder and Paddock for the possession of eight cows and they bring error. Schraeder was sheriff and took the cattle on an execution against Joseph B. Mitchell, the husband of the plaintiff. Paddock apparently was made a special deputy to take the cattle and custodian

to hold them.   He rounded them up on the range for the sheriff, and held them for him.

Three defenses were pleaded:   First, denial of plaintiff's ownership; second, ownership in judgment debtor, Joseph B. Mitchell; third, estoppel by conduct.

As to the first, we are bound by the judgment of the court below.   The second is mere evidence to disprove the ownership of the plaintiff.   *Payne v. Williams,* 62 Colo. 86, 160 Pac. 196.   The issue is, Did the plaintiff own the cows, not did J. B. Mitchell own them?

The conduct relied on to support the plea of estoppel was that plaintiff for many years had branded all her cattle, including the cattle in question, with J. B. Mitchell's recorded brand, "H A M", had permitted him to return them to the assessor in his name, to pay taxes on them in his name, to represent them to be his, and to ship and sell them and give bills of sale in his name, that all this was done, as she testified, "so he could handle them better"; that the attorney for the judgment creditor investigated the records, made inquiries, relied on these facts, and accordingly ordered the levy.

It is claimed that estoppel was not sufficiently pleaded by the defendants; but we think that their third amended defense was sufficient against a general demurrer.

There seems to be a clear case of estoppel.   What right would Mrs. Mitchell have to claim ownership against an innocent purchaser when she had permitted the things above mentioned?   The question needs no answer.   The execution creditor is in the position of a purchaser.   *Hallett v. Alexander,* 50 Colo. 37, 42, 114 Pac. 490, 34 L. R. A. (N. S.) 328, Ann. Cas. 1912B, 1277.

She urges that intentional deceit is essential to estoppel by conduct, and that it is neither alleged nor proved.   We do not so understand the law.   That is the general, though not the complete and invariable rule in case of express misrepresentation; but even mere negligence in clothing another with apparent title is enough to estop one to deny that title against one thereby deceived to his injury.   21

C. J. 1169, 1172 et seq.; *Gottlieb v. Barton*, 13 Colo. App. 147, 56 Pac. 754.   See also *Leadville v. Coronado M. Co.*, 29 Colo. 17, 67 Pac. 289; *Weghorst v. Clark*, 66 Colo. 535, 180 Pac. 742; *Wellington, etc. Co. v. Gilbert*, 24 Colo. App. 118, 125, 131 Pac. 803.

In the present case the plaintiff had conferred upon J. B. Mitchell "the usual evidences and indicia of ownership" for the very purpose of enabling him to deal with the property as his own.   See 6 C. J. 1147, § 108.   Not only were the indicia usual, but they were by statute made prima facie evidence of ownership for the purpose of making it safe to deal with the holder.   The defendants' attorney took more than the usual precautions and the plaintiff may not deny the title of her husband.   *Coors v. Reagan*, 44 Colo. 126, 133, 96 Pac. 966.

Thus far the case is simple; but after the defendant, Paddock, had testified and a recess had been taken, he was put on the stand for further cross-examination and testified that as a boy he had worked for Mrs. Mitchell in 1898 or '99, and said "Mrs. Mitchell to my knowledge has always had some cattle and they were bearing the brand of H A M".   He further said that he knew this when he took the cattle; that when he was deputized to get the cattle he asked the sheriff "Do you know that J. B. Mitchell owns these cattle?"   That he asked the question because he was afraid of getting into trouble; that he then believed that Mrs. Mitchell owned them but did not intimate that to the sheriff.   No answer by the sheriff to his question is disclosed by the record.

This testimony is remarkable in several respects, among which are that his fear led him to ask the question but not to get an answer; that he went ahead and seized the cows without an answer, regardless of his fears, and that he was false to his duty in failing to tell what he knew and stated these things under oath with apparent indifference. But, since the court made no findings, we must take this evidence as true.

We have, then the question whether the knowledge of a

special deputy acquired before his appointment can be imputed to the sheriff.

In matters between private individuals knowledge of an agent acquired before the creation of the agency, according to many authorities, will not be imputed to the principal; but others, including the Supreme Court of the United States, hold that if the agent had it in his mind or if the circumstances are such as to justify the conclusion that he had it in his mind when he acted, it will be imputed to the principal. 2 C. J. p. 867. If the theory of the imputation is, as it is sometimes said to be, that there is a presumption that the agent will communicate the information to the principal, affirmative proof, as in this case, that he did not do so, ought to destroy the imputation, but we do not think it necessary to decide that point. The rule may be correct between private principal and agent, but when the question is between a public officer and his deputy a different situation arises. The public officer acts not in his own interest, but in the interest of the public, and in this case also in that of one appealing to the public functions of the court and of the officer acting in his public capacity, he picks up a citizen and appoints him to perform a special act; to charge him with knowledge which such appointee previously had, but does not disclose, and to visit the consequences of that knowledge upon persons in whose interest he is acting as public officer, seems to us wrong.

This conclusion finds support in the case of *Russell v. Lawton,* 14 Wis. 202, 80 Am. Dec. 769, and in *Whitney v. Butterfield,* 13 Cal. 335, 73 Am. Dec. 584, in which cases, under the circumstances therein disclosed, the sheriff was held not to be charged with notice even of facts which came to the knowledge of his deputies during their activities as such in the very matter there in question. This is going much farther than we are required to go here. We do not need to approve or disapprove those cases, but they justify our conclusions.

The judgment is reversed with direction to enter judgment for the defendants.